Council, when you're ready to proceed, you may step up. And I should try to say, I think, good to see you again in this case. Yeah, Judge Owens, I think in the last argument you asked, will Cane 2 appeal from a motion to dismiss, and I said yes, so here we are. Thank you, good afternoon, may it please the Court and Council, Philip Thonis for the State of Oregon. I will endeavor to reserve two minutes for rebuttal, if I can. The district court erred in granting defendant's motion to dismiss based on supremacy clause immunity. Because the record evidence, when viewed in the light most favorable to the state, does not establish that defendant's conduct was objectively reasonable as a matter of law. Indeed, when viewed through the correct procedural lens, the record reveals disputed questions of fact, which in turn preclude the legal determination that defendant's conduct was objectively reasonable. Four aspects in the state's view, four aspects of the district court's opinion bear special emphasis and reveal that the district court failed to view the record evidence in the light most favorable to the state. How do we get around the language of the Clifton case that any errors which are made in factual review of an immunity claim are reviewed for, quote, clear error, unquote? Your Honor, I don't know that the clear error standard is appropriate in this case for a couple of reasons. The first is that I don't understand the district court to have purported to be making any factual findings. Found that the actions of Landis were objectively reasonable. Your Honor, I think at this stage, at the pretrial stage, when we're talking about defendant's burden on a Rule 12b motion to dismiss, I think that's a legal determination. Certainly, that's a factual question if this case were to go to trial. And isn't it a legal determination which the Clifton Court says should be made by a federal judge on all the evidence? Here, we had an evidentiary hearing. Yeah, exactly, Your Honor. But because it's a legal determination, that allows this court to review that determination de novo rather than for clear error. Well, the district court was quite clear going through what is denominated as undisputed facts. And it didn't seem to me that, in fact, you were disputing those facts, but, in fact, the conclusion that could be drawn from those facts. What, in your view, are clear facts that you believe are disputed that would tip the procedural posture in your favor? I think there are four primary disputed factual issues, Your Honor. There might be more, but in our brief, we highlighted four. So the first is that the district court stated, this is on 1 ER 5, the district court stated that defendant subjectively believed that he needed to drive through the intersection without stopping. We don't believe that that view of the facts can be supported if the record is viewed in the light most favorable to the state. And our primary support for that is the defendant's grand jury testimony. This is at 2 ER 153 through 54. Defendant testified to the grand jury that he did not believe that the situation was urgent, even though the subject had turned onto Mission Street and three of the agents were unable to follow. He did testify that he was driving with a purpose, but he did not tell the grand jury that he subjectively thought he needed to drive through the intersection. In fact, he he told the grand jury that he could not remember whether he stopped or not, but he did remember slowing down to some degree before going through the intersection. Do you have any case? Do you have any case that suggests that exigency or emergency is actually an element here? It's it's not an exigency is not an element, Your Honor, of of the of the immunity test. It's I think it's something it's a factor that would go into the sort of overall circumstances of whether an officer's conduct are whether the officer's conduct is objectively reasonable. Objectively, so what other facts in addition to the subjective view of the officer, right? So then the our next sort of contention is that the district court stated that the agent agents sort of routinely break traffic laws in the performance of their surveillance duties. We think that's that's accurate, but it's an oversimplification and I don't think it goes as far as the district court thought it did. So multiple agents testified that they have to speed, for example, or maybe break other traffic laws when they're trying to stay with a subject, because subjects might drive erratically in order to evade being tailed and they might make unexpected traffic traffic changes or maybe run through a red light or something like that. But the agents also stated and again, this is viewing the record evidence in light most favorable to the state. The I think it was Agent Hoagland who testified, and this was at the evidentiary hearing, that there are limits to what the agents are are able to do with respect to breaking traffic laws, because if they do something that a normal sort of atmospheric sort of the normal atmospheric traffic wouldn't otherwise do, then they risk being made by the subject. And your other two points would be what? Oh, thank you. So our third point is that the court, although the court didn't address it a lot in its opinion, the court appeared to state that defendants conduct was consistent with DEA policy. Again, that that defendants conduct was consistent with DEA policy. And your and your and your last point would be? Our last point, Your Honor, is that and this isn't really so much of a factual finding as it is. We think that the district court placed too much weight on the the fact that defendants job as a DEA agent is the mission of the surveillance was to identify and disrupt fentanyl trafficking. The state, of course, has has no dispute that that's an important mission. And, of course, the state itself, through local and state law enforcement, actively participates in that in that mission. But we think that it kind of misses the point. The point here is what we're asking is whether defendants conduct in driving through the intersection. In the circumstances at the time, which did not include an emergency, did not include hot pursuit and involved a subject who was still being tailed by at least two other officers who had who had eyes on the subject and were in radio communication. That's that's the question. That's the legal question. Was that objectively reasonable? Your last two points you kind of indicate are not really factual points or at least not clearly at odds with what the district court said, which would lead you to the first one. So I want to go back to Judge Bay's original comment coming from Clifton, where the court said that proper application of the standard doesn't require to show that the action was necessary or, in retrospect, justifiable. Only that the petitioner or defendant reasonably thought it to be. And so is your bottom line is that you don't think the record supports that the land is actually reasonably thought it was necessary? Is that the bottom line? That's that's correct. That's sort of the first part of the of the necessary and proper is that that the agent must have a subjectively a subjective belief that their conduct is necessary. And and so that that was the first the first point I raised. And then, of course, we also dispute whether the record could support a finding that his his conduct was objectively reasonable given the circumstances. Well, I think this is a little bit different than your standard motion to dismiss where we're looking at the pleadings, obviously. And here we have really a court sanctioned from precedent having a fact finding hearing. So in that regard, I have some trouble understanding why you think that would be de novo. I think your honor, I agree that it's procedurally that it's it is a bit of a strange situation and the case law is not always terribly consistent and how the appeals courts aren't always terribly consistent and and what they describe and how they describe their job on appeal. And so I think I'm probably primarily relying on Horiuchi, although that case was dismissed as moot. Right. Take Horiuchi just a second. The majority opinion in that case remanded for a judge determination, not a jury determination. And even though it was vacated and the dissent didn't want any remand at all. So how do you get Horiuchi to help you? Well, your honor, my understanding of the dispute about whether the district court would make findings or whether the jury would make findings is because the Horiuchi said that dismissal pretrial was not appropriate because there were genuine issues of fact about whether the officer that that was the case where the officer accidentally shot the woman during the Ruby Ridge standoff. And so that my understanding is that this court said that it should not have been dismissed based on supremacy clause immunity pretrial. And then there was there was, I think, a dispute among the judges about, well, who decides the facts that go to immunity once the case goes to trial? Is it the district court or is it the jury? No, it's not dispute between the between the judges and the majority of the judges and the majority remanded for a judge determination. Judges in the minority didn't want a remand at all. Well, that that may be your honor, but I think the more the more pertinent takeaway from Horiuchi is that the majority of the court held that the case should not have been dismissed as a matter of law. Judge Kaczynski was very clear that he thought that in criminal cases, the remand should be for a judge determination. So the facts and the only person who sort of indicated that that was wrong with Judge Fletcher because it was a criminal case, not a civil case. But I don't see that Horiuchi helps you at all. Well, your honor, I think the way Horiuchi helps us is because we like the majority recognized in that case. We have also pointed out genuine issues of fact that we think should have precluded immunity as a matter of law. I'm over my time. We'll give you two minutes for rebuttal. Thank you. Good afternoon and may it please the court. I'm Hannah Horsley and I represent Special Agent Samuel Landis. I believe the court's honed in on the two key problems here on appeal with the defendant's appeal and the reasons why the judgment of the district court should be affirmed. First, even today, they really are not identifying any genuine disputes of material fact. These really are, in essence, a criticism and a disagreement with the district court about the legal conclusions it drew from an undisputed factual record. But if it's a legal conclusion, shouldn't we review de novo? So I think it's clear from the cases. Clifton didn't expressly articulate the standard and, of course, that was a habeas case back at the time. As the court recognized in Horiyuchi, albeit vacated, and other circuits have recognized in Long and other cases, it's a mixed question of law and fact. So the ultimate determination is reviewed de novo. But the cases clearly recognize that in this very unusual procedural posture where there's a pretrial motion to dismiss and a full evidentiary hearing, the district court judge is the decider of the preliminary questions of fact. Now, if there's a genuine dispute, it may ultimately go to the jury. But Long and other cases, in addition to Horiyuchi, clearly recognize that the district court has to make a determination of preliminary issues of fact. Here, I think it is clear, and it was Judge McShane's understanding, there really were no disputed material facts. And so he effectively didn't make factual findings. I think the closest one is the finding that Agent Landis did have an honest, subjective belief that it was necessary for him to run the stop sign in order to circle back with the surveillance team and continue with the operation. But that's, of any of them, the only one that even comes close, really, to a factual finding. And, of course, that would be reviewed for clear error, as Clifton clearly stated. What do we do with the Morgan case decided after Clifton, which points to abusive discretion as yet another standard of review into the calculus? You know, I think Morgan is definitely distinguishable. First of all, it's not a supremacy clause immunity case. And so it doesn't kind of present the same unique posture. I think the issue there was more conduct that's occurring outside the scope of authority, which is really not disputed here. There's no challenge here that he was on duty. He was acting within the scope of his duties and engaged in an enforcement operation at the time. And in Morgan, you know, the question was really driving under the influence and the use of force in a very different situation involving a minor traffic accident. So I don't think that does anything to really elucidate the standard. I agree with Judge Bea that Horiyuchi is the clearest kind of most recent articulation for this circuit of the relevant standards. I did just want to circle back and address the four alleged disputed facts as the government characterizes them and just clarify what the record does show with respect to each of those, which is no disputed fact. On the issue of whether officers must often break traffic laws, which the government disputes here, it's very clear from the record. I mean, it's replete that every single DEA agent who testified from the ASAC, Walters, all the way down through the task force officers that the government called at the evidentiary hearing all testified that breaking traffic laws was often necessary during covert surveillance operations like this. And the state never presented any contrary evidence to that. Same with the DEA policy. The state is arguing on appeal that the district court's assessment of the DEA policy was inconsistent, or his finding that Agent Landis' conduct was consistent with the policy didn't take into consideration the full record below because there was, they claim, not specific testimony that this type of surveillance operation, when there was no preplanned arrest, is not an enforcement situation. And that's clearly wrong under the record. There was testimony from Special Agent Hoagland, who actually ran the exact same stop sign just moments earlier, that when he's on surveillance, when he was on surveillance, it fell under the DEA enforcement policy subsection D. And he was asked specifically, when you ran that stop sign, did you believe you were acting consistently with policy D? And he said yes. And that's at 3 ER 260. There's similar testimony from Special Agent Thomas at page 280, and there's no contrary evidence that was presented by the state. I think on this record, we're faced with an agent who made a tactical decision that he honestly believed it was necessary for him to run that stop sign and that it was safe to do so under the circumstances at the time. In hindsight, that was the wrong call. We all know that now. But it was reasonable under the circumstances. And once he moved for dismissal of the indictment based on that immunity, the state had that burden to present sufficient evidence to really raise at least a genuine question of material fact of whether that was true, if not to dispute the evidence that Agent Landis presented. And it failed to do that. The judgment of the district court should be affirmed. Unless the court has any other questions, I'll... I was looking at the four points that your friend brought up, and I didn't see that you answered number one, that the defendants objectively believed that no stop was needed because of his grand jury testimony that it was not urgent. Your Honor, there wasn't a conflict with the grand jury testimony. The grand jury testimony was just incomplete. So he testified in grand jury twice, I think, that he couldn't remember if he stopped, which is not inconsistent with his testimony at the hearing that he honestly believed he had to run the stop sign. He didn't say in grand jury that he didn't think he needed to stop or that he thought he needed to stop and proceeded anyway. So it was incomplete. It just, it was not inconsistent. And the last point he had, your friend made, was that too much weight was placed on the defendant's job as the DEA agent to disrupt fentanyl trafficking. Yeah, and again, that's a challenge to the legal conclusion, and it's relevant. Challenge to the? More to the district court's legal conclusion. They're not pointing to any factual dispute. And of course, the nature of the mission, the work that any federal agent or officer is doing, is highly relevant to the analysis here as to whether what they did was in fact necessary under the circumstances. And the cases where immunity is not granted are typically cases where the nature of the conduct is not necessary given the mission. So it was important and relevant for the district court to determine what the mission was and what he was doing at the time the accident occurred. This isn't like the military convoy cases or the delivering the mail cases where the nature of the mission was very different and the traffic violation wasn't necessary in furtherance of the mission. Thank you. Last Judge McEwen, do you have any questions? No further questions. Rebuttal time. Thank you. Just briefly, with respect to the standard of review, of course, Horiyuchi is not binding on this court. And we, like counsel noted, there are cases from other circuits that have stated that appeals in this context present mixed questions of law and fact. And so review is de novo. As far as defendant's subjective belief, we absolutely dispute whether he had a subjective belief that his conduct was necessary. And we think that viewing the record evidence in the light most favorable to the state leads to the conclusion that there is a genuine issue of fact on that point. As to the evidence presented at the evidentiary hearing, do you also contend that the judge must take that in the light most favorable to the plaintiff? In the light most favorable to the state. To the state? Right. You're the plaintiff, right? Right, yeah. That's right, Your Honor. So he can't actually judge facts? He must take whatever is most favorable to your side? To the extent that facts can lead to reasonable inferences that will go one way or the other. So, for example, if you're looking at the defendant's grand jury testimony and his testimony at the evidentiary hearing, you could infer either that he did not subjectively believe that he needed to drive through the stop sign or that he did. Our view is that that inference needs to go in the state's favor at this pretrial stage. Do you have any cases so holds? The Wyoming v. Livingston, Your Honor, that's the Tenth Circuit case from 2006, 443 F. 3rd, 1211. That's on page 1226. That the court reviews the facts in the light most favorable to the state. I know I'm taking up most of your time, but give me your best reason for rejecting Clifton's words that clear error is a standard for review here. Well, Clifton was a habeas case, Your Honor, so I don't know that it's all that. I mean, maybe there's some persuasive authority. I think Horiyuchi probably is the more pertinent authority, even though it's no longer binding. But you do admit that even under Horiyuchi, the review of the four disputed issues which Judge Kaczynski laid out in his opinion was to be done by a judge, not by the jury. That may be true, Your Honor, but. The federal judge, not the state judge. Right, right. Of course, but even then, the Ninth Circuit said that because there were disputed issues of fact as to some of those issues, that dismissal was not appropriate. Let me ask you about the Wyoming case. If I recall, in that particular case, there was not an evidentiary hearing. Is that right? I think that's right, Your Honor. I don't recall. And that would be a very critical difference from this case. In other words, if we were to take your position at face value, there's hardly any value of having a district court determination or evidentiary hearing. Correct? Well, I don't know that I agree with that, Your Honor. And again, I would point out that reading the district court's opinion, it did not strike me that the court thought it was making factual findings or resolving disputed factual issues. And in this posture, we cite a case in our reply, United States v. Pan Gang Group Company Limited. It is the defendant's burden to demonstrate that they are entitled to dismissal in a criminal case on immunity grounds. And so that's why I think from that, it has to follow that the record evidence should be viewed in the light most favorable to the state. But if there's no hearing in, for example, the Wyoming case or even the other case that was cited, New York v. Tonella, those two cases wouldn't really give us any insight as to the standard of review, would they? I think I agree with that, Your Honor. So to the extent, I guess maybe I'll conclude with, to the extent that this court thinks that the district court made factual findings and that it's reviewing those for clear error, at the very least, the court's finding that defendants subjectively believed that he needed to go through the stop sign was clearly erroneous based on his grand jury testimony. All right. Thank you, counsel. Thanks to both of you for your briefing and argument in this case. This matter is submitted. All rise.
judges: McKEOWN, BEA, OWENS